THE LAW OFFICE OF
TIMOTHY M. COLLIER, PLLC

**Law Office of Timothy M. Collier, PLLC**
3295 N. Drinkwater Blvd., Suite 9
Scottsdale, Arizona 85251
Phone (480) 248-0657  Fax (480) 718-8759
Timothy M. Collier, Bar No. 30431
William A. Weber, Bar No. 034718
E-mail Address: timothy.collier@tmcollierlaw.com
E-mail Address: william.weber@tmcollierlaw.com

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT

## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| ArubaWater Corp., a Wyoming Corporation,  ) | Case No. CV-23-01023-PHX-SPL |
| ) | |
| Plaintiff,  ) | |
| v.  ) | **FIRST AMNDED COMPLAINT** |
| ) | |
| Wells FargoBank, National Association, a  ) | |
| Foreign For-Profit Corporation;  ) | |
| ) | |
| Defendant.  ) | |
| ) | |
| ) | |
| ) | |

NOW COMES Plaintiff ArubaWater Corp., a Wyoming Corporation ("ArubaWater" or "Plaintiff"), by and through counsel, pursuant to Rule 15(a)(2), Fed.R.Civ.P., this Court's Preliminary Order (Dkt. 6.) allege as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      At all times relevant, and through, Plaintiff, a Wyoming Corporation, with its principal place of business located in Scottsdale, Arizona, and having a statutory agent located in Sheridan, Wyoming, did and does substantial business in the State of Arizona and the County of Maricopa, and as described herein, was directly involved in one or more actions alleged herein by Defendant.

2.     All allegations set forth herein by Plaintiff took place in the State of Arizona, Maricopa County out of which these claims arise, such that they are subject to this Court's jurisdiction.

3.     At all relevant times, and through and including the present time, Defendant, Wells Fargo, with its principal place of business located in California, and having a statutory agent listed and located in Phoenix, Arizona, did and does substantial business in the State of Arizona and the County of Maricopa.

4.     Upon information and belief, Defendant may be vicariously liable for all misconduct, including but not limited to employees, volunteers, members, shareholders, agents, mangers, and owners, pursuant to the doctrine of *respondeat superior* unless one or all were acting outside the scope of their authority.

5.     Corporations I-X; Limited liability Companies I-X; John and Jane Does I-X, are fictitiously named Defendants who are officers, employees, agents, servants, representatives, principals, subsidiaries, and/or affiliates of one or more Defendant, and who have committed wrongful acts and are either joint or concurrent malfeasors with the specifically named Defendant, and who acting in both their individual and/or official capacities are, therefore, also jointly and severally liable for such acts or omissions. Plaintiff requests leave of this Court to amend this Complaint to join these Defendants and to assert their true names and capacities when the same have been ascertained.

6.     This matter involves a contract for bank account holder services in the State of Arizona, Maricopa County, subject to this Court's jurisdiction under 28 U.S.C. §§ 1332.

7.     All actions, transactions, omissions, and occurrences complained of herein occurred

in Maricopa County, State of Arizona

8.      Jurisdiction and venue are proper in this Court pursuant to 28 U.S.C. §§ 1332.

## BACKGROUND INFORMATION

9.      On or about October 24, 2022, ArubaWater initiated a wire transfer, through its Wells Fargo account, to Sourceline Machinery, LLC's ("Sourceline") PNC Bank account, Wire Routing Number ending in 0096 and Account Number ending in 3614 ("Sourceline Account") for $100,000.00.

10.     On October 25, 2022, Aruba Water sent a second wire transfer from its same Wells Fargo account to the same Sourceline Account in the amount of $72,500.00. (Collectively referred to as the "Wire Transfers").

11.     ArubaWater, when setting up the recipient in the wire transfer online portal through Wells Fargo, mistakenly named Sourceline Machinery, LLC as Sourceline Machinery, Inc.

12.     The use of "Inc." instead of "LLC" should have caused the Wire Transfers to be halted by Wells Fargo as an incorrect account holder.

13.     On October 26, 2022, Sourceline confirmed the Wire Transfers were not received into the Sourceline Account.

14.     Again, on October 28, 2022, Sourceline confirmed the Wire Transfers were never received into the Sourceline Account.

15.     Upon information and belief, not only was the name of the account holder incorrect but the Wiring Routing Number and/or the Account number as well.

16.     Which again, should have caused the Wire Transfers to be halted by Wells Fargo as an incorrect account.

17. ArubaWater inquired to Wells Fargo on or about October 31, 2022, and upon advice of the Wells Fargo representative, ArubaWater initiated a fraud claim.

18. As explained by Wells Fargo, the importance of the fraud claim is Wells Fargo would immediately issue a recall.

19. Wells Fargo allegedly issue three (3) recalls regarding the $100,000.00, the first on October 31, 2022, the second on November 3, 2022, and the third on November 8, 2022.

20. Each recall contained the same "PEGA" number WFW221028-004550 and included the note "Indemnity Intended."

21. Wells Fargo would issue three (3) additional recalls regarding the $72,500.00, the first on October 31, 2022, the second on November 3, 2022, and the third on November 8, 2022.

22. Each recall contained the same "PEGA" number WFW221028-004551.

23. PNC Bank denies receiving any of the recalls.

24. ArubaWater's representative, Mindi Osborn, through countless phone calls and in person visits to Wells Fargo branch was finally able to get some information from Ms. Petra Rachels, Assistant Vice President, Branch Manager of PNC Bank at the Via Linda and Frank Lloyd Wright location.

25. Ms. Rachels made further inquiry and reported back that whoever was researching the issue, was "unable to locate any wire recalls" for the Sourceline Account.

26. Ms. Rachel further confirmed the person researching the issue did have the recall information from Wells Fargo previously provided by ArubaWater.

27. On or about January 5, 2023, Wells Fargo responded to ArubaWater and confirmed that PNC did not return any funds from Wire Transfers, and stated PNC was not required to return

the funds requested by Wells Fargo.

28. On or about January 9, 2023, PNC, through Ms. Rachel, emailed ArubaWater and stated that Wells Fargo was going to have to handle the issue with Wire Transfers as PNC was unable to locate any information.

29. On or about February 17, 2023, ArubaWater sent demands to PNC and Wells Fargo for information on the Wire Transfers and to return to its account the full amount of the Wire Transfers, which should have never been sent by Wells Fargo.

30. Wells Fargo never responded to the February 17, 2023, letter sent by ArubaWater other than to acknowledge the receipt of ArubaWater's letter.

31. On or about March 21, 2023, PNC responded to ArubaWater's February 17, 2023, letter and stated that:

> Our records do not indicate receipt of a wire recall from Wells Fargo. PNC's records indicate that the account holder depleted the Wired Funds through debit transactions and checks issued prior to PNC receiving notice of any alleged error. Nonetheless, PNC took steps in good faith to contact the financial institutions of first deposit to see if any funds could be recovered. PNC was able to make a partial recovery of the Wired Funds and contacted Wells Fargo to notify it of such and request indemnity in order to return the funds. To date, Wells Fargo has not provided PNC with an indemnity agreement.

32. PNC further declined any liability, and refused to confirm the name of the account holder to the Sourceline Account, and refused to reimburse the Wire Transfers on the positions of ArubaWater lacks standing to bring a claim against PNC, no duty is owed by PNC to ArubaWater, PNC accepted the correct amounts authorized by ArubaWater in the Wire Transfers, PNC is not liable for its customer withdrawing the amounts of the Wire Transfers, and there was never an injunction sought or ordered against PNC preventing the movement of the Wire Transfer amounts.

33.     Although Wells Fargo confirmed on January 5, 2023, that PNC did not return any funds from Wire Transfers, and stated PNC was not required to return the funds requested by Wells Fargo, Wells Fargo never informed Plaintiff about the partially recovered funds.

34.     Upon information and belief Wells Fargo never investigated ArubWaters claim as required.

35.     Upon information and belief Wells Fargo never contacted PNC or it would have known about PNC's partial recovery of ArubaWater funds.

36.     Alternatively, Wells Fargo did contact PNC Bank, knew about the partially recovered funds and refused to inform ArubaWater of the same.

37.     Despite the fact ArubaWater timely notified Wells Fargo of the incorrect name, that the intended recipient, Sourceline, did not receive the Wire Transfers, and intended indemnity as to the $100,000.00 transfer, Wells Fargo now takes the position it is not required to indemnify.

38.     ArubaWater relied on Wells Fargo to investigate ArubaWater's claim.

39.     Aruba Water relied on Wells Fargo's intent to indemnify not only to receive the partially recovered funds by PNC finds but to file this lawsuit.

40.     Wells Fargo is liable to ArubaWater pursuant to A.R.S. § 47-4101 et seq, and A.R.S. § 47-4A101 et seq.

<u>COUNT I</u>

**(Breach of Contract)**

41.     ArubaWater incorporates the foregoing Paragraphs of its' Verified Complaint as though fully re-stated herein.

42.     The bank account holder services agreement between ArubaWater and Wells Fargo

is a valid and enforceable contract in which an offer, an acceptance, and consideration all exist.

43. The bank account holder services agreement requires Wells Fargo to follow a commercially reasonable security procedure to verify the authenticity of an instruction received to send a funds transfer.

44. The bank account holder services agreement assigns liability to the account holder for all losses relating to unauthorized funds transfers that don't result solely from our negligence or intentional misconduct.

45. ArubaWater fulfilled its obligations under the account holder services agreement, by paying any and all applicable fees, and timely notifying Wells Fargo of the error.

46. Wells Fargo breached each and every one of the following duties pursuant to the account holder services agreement :

    a. Wells Fargo had a duty to use commercially reasonable standards to ensure ArubaWater's Wire Transfers went into the intended account;

    b. Wells Fargo had a duty to investigate if any funds could be recovered;

    c. Wells Fargo informed ArubaWater it would investigate but did not thoroughly, if at all;

    d. Wells Fargo failed to inform ArubaWater PNC had recovered partial amounts of the Wire Transfers;

    e. Wells Fargo failed to respond to PNC in an effort to recover some of the monies sent by Wire Transfers, currently held by PNC, by offering the requested indemnity;

    f. Wells Fargo failed to maintain its intent to indemnify the partial funds recovered by PNC, as stated in three (3) of its recalls.

47.    ArubaWater suffered significant losses and has been damaged as a direct and proximate result of Wells Fargo's breach of the account holder services agreement including, but not limited to, the amounts lost in the Wire Transfers, attorney fees and costs, and other compensatory, consequential, and statutory as applicable.

## COUNT II

### (Breach of Good Faith and Fair Dealing)

48.    ArubaWater incorporates the foregoing Paragraphs of its' Verified Complaint as though fully re-stated herein.

49.    Wells Fargo had a duty, in good faith as implied in any contract, to properly fulfill each of its' obligations in the bank account agreement.

50.    Wells Fargo breached each and every one of the following duties pursuant to the bank account agreement:

   a. Wells Fargo had a duty to use commercially reasonable standards to ensure ArubaWater's Wire Transfers went into the intended account;

   b. Wells Fargo had a duty to investigate if any funds could be recovered;

   c. Wells Fargo informed ArubaWater it would investigate but did not thoroughly, if at all;

   d. Wells Fargo failed to inform ArubaWater PNC had recovered partial amounts of the Wire Transfers;

   e. Wells Fargo failed to respond to PNC in an effort to recover some of the monies sent by Wire Transfers, currently held by PNC, by offering the requested indemnity;

f.  Wells Fargo failed to maintain its intent to indemnify the partial funds recovered by PNC, as stated in three (3) of its recalls; and

g.  Respond substantively to ArubaWater's demand sent February 17, 2023.

51.  Wells Fargo's breach of good faith and fair dealing, as explained above, was without any reasonable basis, and Wells Fargo knew it to be unreasonable.

52.  ArubaWater suffered significant losses and has been damaged as a direct and proximate result of Wells Fargo's breach of the duty of good faith and fair dealing including, but not limited to, the amounts lost in the Wire Transfers, attorney fees and costs, and other compensatory, consequential, statutory, and punitive damages as applicable.

**COUNT IV**

**(A.R.S. § 47-4A101 et seq.)**

53.  ArubaWater incorporates the foregoing Paragraphs of its' Verified Complaint as though fully re-stated herein.

54.  Wells Fargo owes duties to its customers, in this case, ArubaWater.

55.  Wells Fargo is the originator's bank of the Wire Transfers, which means it is the receiving bank of the payment order pursuant to A.R.S. § 47-4A104.

56.  Wells Fargo is ArubaWater's bank, which means that it is the bank to which ArubaWater sent its payment order pursuant to A.R.S. § 47-4A104.

57.  Wells Fargo, pursuant A.R.S. § 47-4A201, was required to have a security procedure for the purpose of verifying that a payment order or communication amending or cancelling a payment order is that of the customer or detecting error in the transmission or the content of the payment order or communication.

58.    PNC received the Wire Transfers that are for a beneficiary that had mismatching descriptions, and incorrect account numbers, pursuant to A.R.S. § 47-4A207(B).

59.    Wells Fargo issued the payment anyways to the incorrect beneficiary, a violation of A.R.S. § 47-4A207(C).

60.    Wells Fargo failed to amend, cancel or detect the error in the Wire Transfers.

61.    Wells Fargo failed to communicate with PNC regarding indemnity after it had been notified that PNC had recovered a partial amount of Wire Transfers and was awaiting confirmation of indemnity.

62.    Wells Fargo failed to maintain its intent to indemnify the partial funds recovered by PNC, as stated in three (3) of its recalls.

63.    ArubaWater is entitled to recover the Wire Transfer money pursuant to A.R.S. § 47-4A207(D)(2) & 4A303(C).

64.    The Wire Transfers were erroneous, pursuant to A.R.S. § 47-4A205 & 4A303.

65.    ArubaWater suffered significant losses and has been damaged as a direct and proximate result of Wells Fargo's breach of A.R.S. § 47-4A101 et seq. including, but not limited to, the amounts lost in the Wire Transfers, attorney fees and costs, and other compensatory, consequential, statutory, and punitive damages as applicable.

**WHEREFORE**, Plaintiff prays for entry of judgment against Defendant as follows:

A.    An Order finding Wells Fargo breached the account holder services agreement;

B.    An Order finding Wells Fargo breached the covenant of good faith and fair dealing;

C.    An order finding Wells Fargo failed to comply with the statutory requirements and duties owed to ArubaWater as described in A.R.S. § 47-4A101 et seq;

D.     For all Plaintiff's damages in such an amount to be proven at trial;

E.     For all Plaintiff's attorney's fees and costs as a result of Defendant's wrongful actions;

F.     For exemplary damages in an amount to be proven at trial; and

G.     For all such other and further relief as this Court may deem just and proper.

RESPECTFULLY SUBMITTED on this 27th day of June, 2023.

By: *s/Timothy M. Collier*
    TIMOTHY M. COLLIER
    3295 N. Drinkwater Blvd., Suite 9
    Scottsdale, Arizona 85251
    *Attorney for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 27, 2023, the foregoing **FIRST AMENDED COMPLAINT** was filed with the United States District Court, for the District of Arizona, using the CM/ECM system, which will send notification of such filing to counsel of record via electronic mail as follows:

Carlie S. Tovrea
Diamond J. Zambrano
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
ctovrea@swlaw.com
dzambrano@swlaw.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

<u>*s/ Tremain Davis*</u>
Tremain Davis