Carlie S. Tovrea (#029709)
Diamond J. Zambrano (#036390)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
Telephone: 602.382.6000
Facsimile: 602.382.6070
E-Mail: ctovrea@swlaw.com
dzambrano@swlaw.com
*Attorneys for Defendant Wells Fargo Bank, N.A.*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

ArubaWater Corp., a Wyoming corporation,

Plaintiff,

v.

Wells Fargo Bank, N.A., a national association,

Defendant.

No. 2:23-cv-01023-SPL

**WELLS FARGO BANK, N.A.'S AMENDED MOTION TO DISMISS AMENDED COMPLAINT**

Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo") respectfully moves to dismiss Plaintiff ArubaWater Corp.'s ("Plaintiff" or "ArubaWater") Amended Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff's Amended Complaint fails to cure the deficiencies alleged in Defendant's Motion to Dismiss. In an attempt to cure these deficiencies, ArubaWater now merely asserts the same three claims against Wells Fargo and includes new allegations that do not do so, even taking Plaintiff's allegations as true. This Court should therefore dismiss the Amended Complaint. This Motion is supported by the following memorandum of points and authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

As discussed in Wells Fargo's previous Motion to Dismiss (Doc. 8), this case is about two wire transfers ArubaWater authorized and submitted to Wells Fargo in October

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

2022 in which it provided inaccurate information in the payment orders. As alleged in the Amended Complaint, ArubaWater authorized two online wire transfers—one for $100,000 and another for $72,500—to an account number ending in -3614 at PNC Bank ("PNC"). ArubaWater intended to send the funds to Sourceline Machinery, LLC ("Sourceline"). In doing so, ArubaWater inexplicably entered the wrong name, account number, and routing number in the payment orders. ArubaWater claims it authorized the two wire transfers and provided Wells Fargo with completely wrong instructions in the payment orders. Multiple days later, ArubaWater attempted to obtain refunds from Wells Fargo and PNC. By that time, the wire transfers had been completed per ArubaWater's instructions. ArubaWater now seeks to shift liability for its mistake to Wells Fargo.

ArubaWater asserts three claims against Wells Fargo for breach of contract, breach of the covenant of good faith and fair dealing, and violations of Article 4A of Arizona's U.C.C. All of ArubaWater's claims fail and should be dismissed.

First, ArubaWater's claims are preempted by Article 4A of Arizona's U.C.C. Second, the Deposit Account Agreement (the "Agreement")[1] upon which ArubaWater's breach of contract and the covenant of good faith and fair dealing claims rely does not support ArubaWater's claims, and, instead, the very terms of the contract refute ArubaWater's claims. The Agreement specifically provides that Wells Fargo has no duty to investigate a customer's wire transfer requests. *See* Ex. A at 18 ("We have no obligation to detect errors you make in payment orders (for example, paying the wrong person or the

---

[1] ArubaWater is a Wells Fargo customer and account holder, whose relationship is governed by a Deposit Account Agreement. *See* Ex. A (Deposit Account Agreement). On a motion to dismiss for failure to state a claim, a court can consider not only the complaint but also attached exhibits and documents incorporated into the complaint by reference. The Court may consider the Agreement as incorporated by its reference in the Amended Complaint because it is integral to and relied upon in the Amended Complaint. *See Van Buskirk v. CNN*, 284 F.3d 977, 980 (9th Cir. 2002) ("Ordinarily, a court may look only at the face of the complaint to decide a motion to dismiss … Under the 'incorporation by reference' rule of this Circuit. A court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."); *see also United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

wrong amount).”). It also provides specifically that Wells Fargo may rely on the account number a customer provides even if the account number identifies a party different from the named recipient. *Id.* (“If an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we’ll rely on the beneficiary account number even if the account number identifies a party different from the named recipient.”). Third, ArubaWater fails to allege facts to support its allegation that Wells Fargo violated Article 4A or is liable for the wire transfers under Article 4A.

## II. RELEVANT BACKGROUND[2]

On October 24, 2022, ArubaWater initiated a $100,000 online wire transfer from its Wells Fargo account to a PNC bank account number ending in -3614 and with a routing number ending in -0096. Am. Compl. ¶¶ 9–12. ArubaWater contends Sourceline owns the account ending in -3614 (hereinafter the “Sourceline Account”). *Id.* The next day, ArubaWater initiated a second online wire transfer from its Wells Fargo account (this time for $72,500) to the Sourceline Account. Am. Compl. ¶¶ 10, 12. For both wire transfers, ArubaWater mistakenly listed Sourceline Machinery, Inc. instead of Sourceline Machinery, LLC when entering the recipient information in the online portal. Am. Compl. ¶ 11. ArubaWater also alleges that it provided an incorrect “Wiring Routing Number” and account number. Am. Compl. ¶ 15. ArubaWater alleges that Sourceline confirmed it never received the wire transfers into the Sourceline Account. Am. Compl. ¶¶ 13–14.

On October 31, 2022—seven days after making the wire transfers—ArubaWater spoke to a Wells Fargo representative and initiated a fraud claim upon advice of the representative as it would prompt Wells Fargo to initiate an immediate recall. Am. Compl. ¶¶ 17–18. Wells Fargo issued a total of three recalls for each wire transfer. Am. Compl. ¶¶ 19, 21. These recalls were issued on October 31, 2022, November 3, 2022, and November 8, 2022. *Id.* Plaintiff alleges that the $100,000 wire transfer recalls contained a “PEGA” number WFW221028-004550 and included the note “Indemnity Intended,” and the

[2] For purposes of this Motion, the factual allegations in the Amended Complaint are treated as true.

$72,500.00 wire transfer recalls contained a "PEGA" number WFW221028-004551. Am. Compl. ¶¶ 20, 22. Plaintiff alleges that it relied on Wells Fargo's intent to indemnify to recover the partially recovered funds and file this lawsuit. Am. Compl. ¶¶ 37, 39. However, Wells Fargo never intended to indemnify any party for the $100,000 wire transfer; the $100,000 wire transfer recall upon which ArubaWater relies clearly states "IN RTN NO* INDEMNITY INTENDED.*" *See* Ex. B (Wire Transfer Recalls).[3]

ArubaWater contends that PNC denies receiving any of these recalls. At some point, Mindi Osborn, an ArubaWater representative, allegedly spoke to a PNC Bank Branch Manager who reported that the bank was unable to locate any wire recalls for the Sourceline Account. Am. Compl. ¶¶ 24–25. However, the PNC Branch Manager confirmed that PNC had the recall information ArubaWater previously provided. Am. Compl. ¶ 26.

On January 5, 2023, Wells Fargo responded to ArubaWater and confirmed that PNC did not return any funds from the wire transfers and did not have to return the funds. Am. Compl. ¶ 27. Shortly thereafter, the PNC Branch Manager allegedly emailed ArubaWater and stated that PNC was unable to locate any information and that Wells Fargo was going to have to handle the issue. Am. Compl. ¶ 28.

In February 2023, ArubaWater allegedly sent demands to PNC and Wells Fargo requesting information on the wire transfers and demanding a refund in the full amount of the wire transfers. Am. Compl.¶ 29. ArubaWater contends that Wells Fargo never responded to the demand other than to acknowledge the receipt of ArubaWater's letter. Am. Compl. ¶ 30. On or about March 21, 2023, PNC allegedly responded to ArubaWater's letter and stated that:

> Our records do not indicate receipt of a wire recall from Wells Fargo. PNC's records indicate that the account holder depleted the Wire Funds through debit transactions and checks issued prior to PNC receiving notice of any alleged error. Nonetheless, PNC took steps in good faith to contact the financial

[3] The Court may consider the wire transfer recalls as incorporated by its reference in the Amended Complaint because it is integral to and relied upon in the Amended Complaint. *See Van Buskirk*, 284 F.3d at 980; *Ritchie,* 342 F.3d at 908.

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

> institutions of first deposit to see if any funds could be recovered. PNC was able to make a partial recovery of the Wired Funds and contacted Wells Fargo to notify it of such and request indemnity in order to return the funds. To date, Wells Fargo has not provided PNC with an indemnity agreement.

Am. Compl. ¶ 31. In addition to the letter, PNC allegedly declined any liability, refused to confirm the account holder name on the Sourceline Account, and refused to reimburse the wire transfers. Am. Compl. ¶ 32.

ArubaWater alleges that Wells Fargo never investigated ArubaWater's claims as required, never contacted PNC, or informed ArubaWater of the partially recovered funds. Am. Compl. at ¶¶ 33–35. Alternatively, ArubaWater alleges that Wells Fargo contacted PNC, knew about the partially recovered funds, and refused to inform ArubaWater of the same. Am. Compl. ¶ 36.

## III. LEGAL STANDARD

A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In reviewing a claim for dismissal under Rule 12(b)(6), courts look to the "face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice." *N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1094 (9th Cir. 2011). Under Rule 12(b)(6), a court may dismiss a claim "where there is no cognizable legal theory or [there is] an absence of sufficient facts alleged to support a cognizable legal theory." *Depot, Inc. v. Caring for Monts., Inc.*, 915 F.3d 643, 652 (9th Cir. 2019). The Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). However, the Court is not required to accept as true any allegations that contradict matters subject to judicial notice or any allegations that are "merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Id.*

## IV. ARGUMENT

### A. The U.C.C. Preempts ArubaWater's Common Law Claims.

Article 4A of Arizona's U.C.C. governs the wire transfers at issue in this case. *See*

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

A.R.S. §§ 47-4A101 to 47-4A507. "U.C.C. Article 4A is 'intended to be the exclusive means of determining the rights, duties and liabilities of the affected parties in any situation covered by particular provisions of the Article.'" *Koss v. Am. Express,* 233 Ariz. 74, 81 (Ariz. Ct. App. 2013). Article 4A "use[s] precise and detailed rules to assign responsibility, define behavioral norms, allocate risks and establish limits on liability [related to wire transfers], rather than . . . rely[ing] on broadly stated, flexible principles." U.C.C. § 4A-102 cmt. As such, Article 4A explicitly limits a bank's liability to that prescribed under the U.C.C.:

> Liability based on acceptance [of a payment order] . . . is limited to that provided in this chapter. A receiving bank is not the agent of the sender or beneficiary of the payment order it accepts, or of any other party to the funds transfer, and the bank owes no duty to any party to the funds transfer except as provided in this chapter or by express agreement.

A.R.S. § 47-4A212. Thus, "the actions of the parties involved in a funds transfer that implicate the transaction itself are exclusively governed by Article 4A." *Koss*, 233 Ariz. at 82.

ArubaWater's breach of contract and breach of the covenant of good faith and fair dealing claims are based on allegations that Wells Fargo failed to "use commercially reasonable standards to ensure ArubaWater's Wire Transfers went into the intended accounts," "investigate if any funds could be recovered," perform a thorough investigation of ArubaWater's claims, "inform ArubaWater PNC had recovered partial amounts of the Wire Transfers," "respond to PNC in an effort to recover some of the monies … by offering the requested indemnity," and "maintain its intent to indemnify the partial funds recovered by PNC…." Am. Compl. ¶¶ 46, 50. At their core, ArubaWater's allegations all relate to the allocation of liability between ArubaWater and Wells Fargo based on the funds transfer process. Article 4A supplies the framework for answering this question and preempts ArubaWater's common law claims. The Court should therefore dismiss ArubaWater's claims for breach of contract and breach of the covenant of good faith and fair dealing as Article 4A preempts these claims.

Moreover, A.R.S. § 47-4A205 specifically displaces ArubaWater's claim that Wells

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Fargo failed to use commercially reasonable security standards to ensure the wire transfers went into the intended account. *See Koss,* 233 Ariz. at 81 (citing A.R.S. § 47-1103(b)). To the extent ArubaWater alleges Wells Fargo agreed to use commercially reasonable security standards to detect the error at issue (it did not), this claim is preempted by A.R.S. § 47-4A205, which specifically addresses the allocation of liability when there is a security procedure in place designed to detect an error in a wire transfer payment order. *See* A.R.S. § 47-4A205. Because this claim alleges misconduct occurred during the wire transfer process, Article 4A controls.

**B. ArubaWater's Breach of Contract Claim Fails.**

Even if ArubaWater's breach of contract claim is not preempted by the U.C.C., ArubaWater's claim fails for the reasons outlined below.

First, ArubaWater's breach of contract claims are "too vague to raise the right to relief above the speculative level," and therefore "fail as a matter of law." *See Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 779 (D. Ariz. 2012). Where a plaintiff "do[es] not refer to any contractual language or any contractual provisions that the [defendant] allegedly breached," conclusory statements alleging breach of contract "are insufficient to survive a motion to dismiss." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 979 (N.D. Cal. 2016). "In an action for breach of written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached." *Id.* at 980 (quoting *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011), dismissing plaintiff's breach of contract claim).

ArubaWater cites only two provisions in the Agreement to support its claims that Wells Fargo failed its duties to: (1) use commercially reasonable standards to ensure the wire transfers went into the intended accounts; (2) conduct a thorough investigation; (3) inform ArubaWater PNC had recovered partial amounts of the wire transfers; (4) respond to PNC in an effort to recover some of the monies by providing PNC with indemnity; and (5) maintain its intent to indemnify the partial funds recovered by PNC. *See* Am. Compl. ¶ 46. The two cited provisions are irrelevant and do not give rise to any of the obligations

Wells Fargo is said to have breached.

The first provision ArubaWater cites concerns funds transfer security procedures and states:

> You agree that we will follow a commercially reasonable security procedure of our choice to verify the *authenticity* of an instruction we receive to send a funds transfer from your account. The security procedure may vary depending on whether we receive the instruction in person, in writing, by phone, or via online or mobile. If we offer, but you decline, an optional security procedure that is commercially reasonable, then you agree that the security procedure chosen to verify the payment order is commercially reasonable for your transaction. You agree to be bound by any funds transfer request that Wells Fargo receives and verifies following a commercially reasonable security procedure, even if the payment order was not *authorized* by you. More details about the security procedures may be found in the applicable funds transfer agreement.

Ex. A. at 19 (emphasis added). ArubaWater alleges that this provision requires Wells Fargo to use commercially reasonable security procedures to detect errors in the content of a payment order and ensure the wire transfers "went into an intended account." However, this reading is incorrect. Nowhere in the provision does it mention detecting errors in the contents of a customer's payment order or ensuring that a wire transfer is executed according to a customer's intent. Instead, the provision clearly states that it applies to verifying that a customer authorized a wire transfer payment. Accordingly, this provision does not give rise to a duty for Wells Fargo to use commercially reasonable standards to detect errors in the content of the payment orders or ensure that the wire transfers went into the accounts ArubaWater intended.

The second provision ArubaWater cites relates to liability for transactions not governed by regulation E and provides that a customer "is liable for all losses related to *unauthorized* funds transfers that don't result solely from [Wells Fargo's] negligence or intentional misconduct, unless the laws governing [a Customer's] account require lesser liability." *Id.* (emphasis added). Like the first provision, this provision is irrelevant because it concerns *unauthorized* funds transfers, and ArubaWater has not alleged that the wire transfers were unauthorized.

ArubaWater does not cite to any other provisions or language in the Agreement giving rise to the alleged duties. Instead, ArubaWater only supplies conclusory statements



Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

and irrelevant provisions to establish that Wells Fargo's actions breached those duties. Because ArubaWater's allegations are vague and speculative, they fail as a matter of law and the Court should dismiss these claims.

Second, ArubaWater's breach of contract claim also fails because the terms of the Agreement refute the allegation that Wells Fargo failed to deposit the transfers into the intended account. Under the Agreement, Wells Fargo was entitled to rely on the account number ArubaWater provided in the payment orders in processing the wire transfers. Ex. A at 18. The Agreement specifically states that "[i]f an instruction or order to transfer funds describes the party to receive payment inconsistently by name and account number, we'll rely on the beneficiary account number even if the account number identifies a party different from the named recipient." *Id.* Moreover, Wells Fargo had no duty to detect the errors ArubaWater made in its payment orders. *Id.* Accordingly, to the extent Wells Fargo had a duty to use commercially reasonable security procedures to transfer the monies into the "intended" account, the Agreement limited that duty to processing the payment orders according to the account number ArubaWater provided. Here, Wells Fargo did exactly what ArubaWater instructed it to do in accordance with the Agreement. ArubaWater's payment orders instructed Wells Fargo to process the wire transfers to an account number ending in -3614. ArubaWater does not allege that it did not authorize the wire transfer payment orders or that Wells Fargo failed to "deposit" the transfers into the account ending in -3614. Accordingly, ArubaWater failed to plead facts sufficient to establish that the monies were not transferred into the "intended" account.

Lastly, the wire transfer recalls refute the allegation that Wells Fargo intended to indemnify the partial funds recovered by PNC. Wells Fargo never intended to indemnify any party for the $100,000 wire recall. The wire transfer recalls upon which ArubaWater relies clearly state "IN RTN NO* INDEMNITY INTENDED.*" *See* Ex. B. Accordingly, ArubaWater failed to plead facts sufficient to establish that Wells Fargo failed to maintain its intent to indemnify the partial funds recovered by PNC.

For the reasons outlined above, ArubaWater's breach of contract claim fails, and the

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Court should dismiss this claim.

### C. **<u>ArubaWater's Breach of the Covenant of Good Faith and Fair Dealing Claim Also Fails.</u>**

ArubaWater asserts that Wells Fargo has breached the covenant of good faith and fair dealing by breaching the same duties outlined in its breach of contract claim as well as an alleged duty to respond to ArubaWater's demand letter. To the extent ArubaWater's breach of the covenant of good faith and fair dealing claims are not preempted by Article 4A, these claims fail as a matter of law as the Agreement imposes no such duties on Wells Fargo.

The duty of good faith and fair dealing arises by virtue of a contractual relationship. *Rawlings v. Apodaca*, 151 Ariz. 149, 153–54 (1986). The covenant prevents either party from acting "to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Id.* Thus, the covenant "is limited to assuring compliance with the express terms of the contract …." *McKnight v. Torres*, 563 F.3d 890, 893 (9th Cir. 2009) (the covenant neither "'alter[s] specific obligations set forth in the contract' nor 'add[s] duties independent of the contractual relationship'"). Accordingly, ArubaWater cannot create obligations through the covenant of good faith and fair dealing that are not expressly provided in the Agreement.

Again, ArubaWater alleges that Wells Fargo breached the Agreement by failing to honor its duty to: (1) use commercially reasonable standards to ensure the wire transfers went into the intended accounts; (2) conduct a thorough investigation; (3) inform ArubaWater PNC had recovered partial amounts of the wire transfers; (4) respond to PNC in an effort to recover some of the monies by providing PNC with indemnity; (5) maintain its intent to indemnify the partial funds recovered by PNC; or (6) respond to ArubaWater's demand letter. *See* Am. Compl. ¶ 50. Nowhere in the Agreement does it provide that Wells Fargo is required to investigate ArubaWater's claims, respond to PNC in an effort to recover some of the monies by providing PNC with indemnity, or respond to ArubaWater's demand letter. Because these duties do not exist, Wells Fargo did not impair any right of

Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

ArubaWater to receive benefits from the Agreement. Moreover, as detailed in Section IV(B), *supra*, Wells Fargo did not fail to use commercially reasonable standards to ensure the wire transfers went into the "intended accounts" or maintain the alleged intent to indemnify the partial funds recovered by PNC. Accordingly, this Court should dismiss the claim.

### D. ArubaWater's Claim That Wells Fargo Violated Article 4A of Arizona's U.C.C. Fails As A Matter of Law.

ArubaWater alleges that Wells Fargo violated multiple provisions of Article 4A of Arizona's U.C.C. Specifically, ArubaWater alleges that Wells Fargo is liable because the payment order was: (1) a violation of the Article 4A provision governing misdescriptions of beneficiaries (A.R.S. § 47-4A207(C)); and (2) erroneous under the Article 4A provisions governing acceptance of payment orders transmitted pursuant to a security procedure (A.R.S. § 47-4A205) and erroneous execution of payment orders (A.R.S. § 47-4A303). ArubaWater also contends it is entitled to recover damages under A.R.S. §§ 47-4A207(D)(2) and 47-4A303. ArubaWater fails to allege facts sufficient to establish a violation of any of the Article 4A provisions listed in the Amended Complaint, and therefore, its Article 4A claims fail.

#### 1. ArubaWater has Failed to Allege Facts Sufficient to Establish a Violation of A.R.S. § 47-4A207(C).

A.R.S. § 47-4A207 governs the allocation of liability between an originator, the originator's bank, and the beneficiary's bank when there is a misdescription of beneficiary (*i.e.*, an error in a payment order that describes the beneficiary inconsistently by name and account number). The provision recognizes that "a large percentage of payment orders … are processed by automated means," and imposing a duty on banks to detect such errors would eliminate the benefits of automated payment. *See e.g.*, A.R.S. § 47-4A207 cmt. 2 (noting "it is possible for the beneficiary's bank to determine whether the name and number refer to the same person, but if a duty to make that determination is imposed on the beneficiary's bank the benefits of automated payment are lost."). Therefore, under § 47-



Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

4A207(C), an originator bears the loss when it has notice that the beneficiary's bank might make payment to the person identified by account number even if there is an inconsistency between the name and the identifying number. A.R.S. § 47-4A207(C).

Here, ArubaWater is the originator, Wells Fargo is the originating bank, and PNC is the beneficiary's bank. The Agreement provided ArubaWater with notice of the risk of providing an inconsistent name and identifying number in the payment order. Ex. A. at 18 ("You could lose funds if you provide incomplete or inaccurate information in your payment orders."). Thus, when ArubaWater made the wire transfers, it was aware that it would bear the loss in the event the payment orders provided an incorrect beneficiary name and account number. Accordingly, pursuant to A.R.S. § 47-4A207(C), ArubaWater (not Wells Fargo) was obliged to pay the payment order. Because ArubaWater is obligated to pay the payment order, it is not entitled to recover from Wells Fargo pursuant to A.R.S. § 47-4A207(D)(2). ArubaWater's only available remedy under this provision is to recover from the person identified by account number in the payment order. *See* A.R.S. § 47-4A207(D)(1). The facts as alleged here do not entitle ArubaWater to relief against Wells Fargo, and therefore, the Court should dismiss this claim.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

### 2. **<u>A.R.S. § 47-4A205 Does Not Apply.</u>**

A.R.S. § 47-4A205 concerns the allocation of liability when there is an error in the content of a payment order and there is a security procedure designed to detect the error. A security procedure "means a procedure established by agreement of a customer and a receiving bank for the purpose of (i) verifying that a payment order or communication amending or cancelling a payment order is that of the customer, or (ii) detecting error in the transmission or the content of the payment order or communication." A.R.S. § 47-4A201.

Under this provision, "the question of whether loss that may result from the transmission of a … erroneous payment order will be borne by the sender or purported sender is affected by whether a security procedure was or was not in effect and whether there was or was not compliance with the procedure." *Id.* at cmt. Section 47-4A205 does not apply if the receiving bank and the customer did not agree to a procedure for detecting

the error. A.R.S. § 47-4A201 cmt 1. Where Section 47-4A205 "does not apply and the funds transfer is completed, Sender is obliged to pay the order.…Sender's remedy, based on payment by mistake, is to recover from the beneficiary that received payment." *Id*; *see also Sherlock Investments-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC,* 2020 WL 4729066, at *4–6 (W.D. Wash. Apr. 7, 2020) (dismissing plaintiff's Article 4A-205 claims without leave to amend because plaintiff failed to allege it agreed to any specific security procedures). If there is a security procedure in place to detect the error, "[t]he risk of loss is shifted to the bank only if the sender proves that the error would have been detected if there had been compliance with the procedure and that the sender … complied." *See* A.R.S. § 47-4A205 cmt. 1. Additionally, A.R.S. § 47-4A205 is subject to variation by agreement. *Id.* at cmt. 3.

ArubaWater fails to (and cannot) allege facts supporting that it and Wells Fargo ever agreed to any specific security procedure to detect an error in the content of a payment order. Wells Fargo and ArubaWater only agreed to a security procedure for verifying that a payment order is that of the customer. Ex. A at 19. ArubaWater does not allege that compliance with the agreed upon security procedure would have detected error in the content of the payment orders at issue here. Additionally, the Agreement specifically states that Wells Fargo has no obligation to detect the errors ArubaWater makes in payment orders. *See* Ex. A at 18. Therefore, A.R.S. § 47-4A205 does not apply and ArubaWater's claim should be dismissed.

**3. <u>ArubaWater has Failed to Allege Facts Sufficient to Establish Wells Fargo's Execution of the Payment Order Was Erroneous Under A.R.S. § 47-4A303.</u>**

A.R.S. § 47-4A303 concerns erroneous payments. That is, situations where payment orders fail to conform with the originator's payment order instructions. For example, an originator may instruct the originating bank to make a payment to account X and the originating bank might mistakenly instruct a beneficiary's bank to make payment to account Y. *See* U.C.C. § 4A-303 cmt. 4 (describing payment to the wrong beneficiary). This section



Snell & Wilmer L.L.P. LAW OFFICES One East Washington Street, Suite 2700 Phoenix, Arizona 85004-2556 602.382.6000

allocates risk between the originator and originator's bank in the event there is a mistake in payment order execution resulting in: (1) overpayment; (2) duplicate payment; (3) underpayment; or (4) payment to the wrong beneficiary. A.R.S. §§ 47-4A303(a)-(c). As applied here, this section provides a framework for allocating risk between ArubaWater (originator) and Wells Fargo (originating bank) in the event Wells Fargo fails to execute ArubaWater's payment order in accordance with its instructions.

Here, ArubaWater's claim fails because it failed to allege any facts sufficient to establish Wells Fargo issued an erroneous payment under A.R.S. § 47-4A303. Plaintiff failed to allege any facts establishing Wells Fargo issued an overpayment, duplicate payment, or underpayment, as it does not allege that Wells Fargo issued payment orders in the wrong amount or issued duplicate payment orders. ArubaWater also fails to allege facts sufficient to establish Wells Fargo made a payment to the wrong beneficiary. Under the Agreement, Wells Fargo was entitled to rely on the beneficiary account number ArubaWater provided in the payment orders. Ex. A at 18. ArubaWater instructed Wells Fargo to issue payment orders to an account ending in -3614. ArubaWater does not allege that Wells Fargo deviated from this instruction or that Wells Fargo issued payment orders to a different account number.

Accordingly, ArubaWater has failed to allege facts sufficient to establish that Wells Fargo's payment was erroneous under A.R.S. § 47-4A303 and that Wells Fargo bears the risk of loss. Accordingly, ArubaWater is not entitled to recover under A.R.S. § 47-4A303, and this Court should dismiss this claim.

## V. CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's Amended Complaint. Plaintiff's claims are insufficient as alleged as a matter of law, and therefore should be dismissed in their entirety.

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

DATED this 19th day of July, 2023.

SNELL & WILMER L.L.P.

By: *s/ Diamond Zambrano*
Carlie S. Tovrea
Diamond J. Zambrano
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
*Attorneys for Defendant Wells Fargo Bank, N.A.*

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

**LRCiv 12.1(C) CERTIFICATION**

Pursuant to LRCiv 12.1(c), before filing this motion, on June 30, 2023 counsel for Defendant and counsel for Plaintiff conferred regarding the issues asserted in this motion. The Parties were unable to agree that the pleading was curable in any part.

DATED THIS 19th day of July, 2023.

*s/ Diamond J. Zambrano*

Snell & Wilmer
L.L.P.
LAW OFFICES
One East Washington Street, Suite 2700
Phoenix, Arizona 85004-2556
602.382.6000

**CERTIFICATE OF SERVICE**

I hereby certify that on July 19, 2023, I filed the foregoing document electronically through the CM/ECF system, which caused all parties or counsel of record to be served by electronic means.

Timothy M. Collier
William A. Weber
LAW OFFICE OF TIMOTHY M. COLLIER
3295 N. Drinkwater Blvd.
Suite 9
Scottsdale, Arizona 85251
*Attorneys for Plaintiff ArubaWater Corp.*

I hereby further certify that on July 19, 2023, a hard copy of the foregoing document was hand delivered to The Honorable Steven P. Logan at:

HONORABLE STEVEN P. LOGAN
United States District Court
Sandra Day O'Connor U.S. Courthouse, Suite 521
401 West Washington Street, SPC 82
Phoenix, Arizona 85003-2161

*s/ Dana Steinwall*