THE LAW OFFICE OF
TIMOTHY M. COLLIER, PLLC

**Law Office of Timothy M. Collier, PLLC**
3295 N. Drinkwater Blvd., Suite 9
Scottsdale, Arizona 85251
Phone (480) 248-0657  Fax (480) 718-8759
Timothy M. Collier, Bar No. 30431
William A. Weber, Bar No. 034718
E-mail Address: timothy.collier@tmcollierlaw.com
E-mail Address: william.weber@tmcollierlaw.com
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**IN AND FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| ArubaWater Corp., a Wyoming Corporation, )<br><br>Plaintiff, )<br>v. )<br><br>Wells FargoBank, National Association, a )<br>Foreign For-Profit Corporation; )<br><br>Defendant. )<br>—————————————————— ) | Case No. CV-23-01023-PHX-SPL<br><br>**ARUBAWATER'S RESPONSE TO WELLS FARGO BANK, N.A.'S AMENDED MOTION TO DISMISS AMENDED COMPLAINT** |

Plaintiff ArubaWater Corp., a Wyoming Corporation ("ArubaWater" or "Plaintiff"), by and through counsel, pursuant to Rule 12(b)(6), Fed.R.Civ.P., and Rule, 12.1, LR.Civ., hereby responds in opposition of Defendant, Wells Fargo Bank, National Association's ("Wells Fargo") Amended Motion to Dismiss ("Amended Motion"). *Dkt. 18.*

**I.    INTRODUCTION.**

Defendant filed its first Motion to Dismiss (*Dkt. 8*) seeking dismissal under 12(b)(6), Fed.R.Civ.P. for failure to state a claim as to all counts asserted by ArubWater in its Verified Compliant filed in the Maricopa County Superior Court, Case No.: CV2023-007148 ("Complaint"). *Dkt., 1.3.* Much Wells Fargo's Motion to Dismiss alleged insufficient pleading

of the claims that could be cured by amending the Complaint. ArubaWater did amend its Complaint pursuant to Rule 15(a)(2), Fed.R.Civ.P., and this Court's Preliminary Order (*Dkt. 6.*). *See Dkt., 13 - Aruba Water's First Amended Complaint ("FAC").*

Wells Fargo's Amended Motion largely asserts the same issues as in its initial Motion to Dismiss including an absolute preemption of common law claims and that Wells Fargo cannot be liable under Article 4A of Arizona's Uniform Commercial Code ("UCC") as alleged. As shown below, the UCC is not an absolute preemption to common law claims and Wells Fargo is asking this Court to make factual determinations at this stage of the litigation regarding any violation of Article 4A of the UCC, which is not appropriate at this stage of the litigation.

## II.    FACTS.

On or about October 24, 2022, ArubaWater initiated a wire transfer, through its Wells Fargo account, to Sourceline Machinery, LLC's ("Sourceline") PNC Bank account, Wire Routing Number ending in 0096 and Account Number ending in 3614 ("Sourceline Account") for $100,000.00. *FAC, ¶ 9.* On October 25, 2022, Aruba Water sent a second wire transfer from its same Wells Fargo account to the same Sourceline Account in the amount of $72,500.00. (Collectively referred to as the "Wire Transfers"). *FAC, ¶ 10.* ArubaWater, when setting up the recipient in the wire transfer online portal through Wells Fargo, mistakenly named Sourceline Machinery, LLC as Sourceline Machinery, Inc. *FAC, ¶ 11.* The use of "Inc." instead of "LLC" should have caused the Wire Transfers to be halted by Wells Fargo as an incorrect account holder. *FAC, ¶ 12.*

On October 26, 2022, Sourceline confirmed the Wire Transfers were not received into the

Sourceline Account. *FAC, ¶ 13.* Again, on October 28, 2022, Sourceline confirmed the Wire Transfers were never received into the Sourceline Account. *FAC, ¶ 14.* Based on the fact that Sourceline did not receive Wire Transfers, not only was the name of the account holder incorrect but the Wiring Routing Number and/or the Account number likely were incorrect as well. *FAC, ¶ 15.* Which again, should have caused Wire Transfers to be halted by Wells Fargo as an incorrect account. *FAC, ¶ 16.*

ArubaWater inquired to Wells Fargo on or about October 31, 2022, and upon advice of the Wells Fargo representative, ArubaWater initiated a fraud claim. *FAC, ¶ 17.* As explained by Wells Fargo, the importance of the fraud claim is Wells Fargo would immediately issue a recall. *FAC, ¶ 18.* Wells Fargo allegedly issue three (3) recalls regarding the $100,000.00, the first on October 31, 2022, the second on November 3, 2022, and the third on November 8, 2022. *FAC, ¶ 19.* Each recall contained the same "PEGA" number WFW221028-004550 and included the note "Indemnity Intended." *FAC, ¶ 20.* Wells Fargo would allegedly issue three (3) additional recalls regarding the $72,500.00, the first on October 31, 2022, the second on November 3, 2022, and the third on November 8, 2022. *FAC, ¶ 21.* Each recall contained the same "PEGA" number WFW221028-004551. *FAC, ¶ 22.* Despite Wells Fargo's representations that the recalls were issued, PNC Bank denies receiving any of the recalls. *FAC, ¶ 23.*

ArubaWater's representative, Mindi Osborn, through countless phone calls and in person visits to Wells Fargo and PNC branches was finally able to get some information from Ms. Petra Rachels, Assistant Vice President, Branch Manager of PNC Bank at the Via Linda and Frank Lloyd Wright location. *FAC, ¶ 24.* Ms. Rachels made further inquiry and reported back that whoever was researching the issue, was "unable to locate any wire recalls" for the Sourceline

Account. *FAC, ¶ 25.* Ms. Rachel further confirmed the person researching the issue did have the recall information from Wells Fargo previously provided by ArubaWater. *FAC, ¶ 26.*

On or about January 5, 2023, Wells Fargo responded to ArubaWater and confirmed that PNC did not return any funds from Wire Transfers, and stated PNC was not required to return the funds even if requested by Wells Fargo. *FAC, ¶ 27.* On or about January 9, 2023, PNC, through Ms. Rachel, emailed ArubaWater and stated that Wells Fargo was going to have to handle the issue with Wire Transfers as PNC was unable to locate any information. *FAC, ¶ 28.*

On or about February 17, 2023, ArubaWater sent demands to PNC and Wells Fargo for information on the Wire Transfers and to return to its account the full amount of the Wire Transfers, which should have never been sent by Wells Fargo. *FAC, ¶ 29.* Wells Fargo never responded other than to acknowledge the receipt of ArubaWater's letter. *FAC, ¶ 30.* On or about March 21, 2023, PNC responded to ArubaWater's February 17, 2023, letter and stated that:

> Our records do not indicate receipt of a wire recall from Wells Fargo. PNC's records indicate that the account holder depleted the Wired Funds through debit transactions and checks issued prior to PNC receiving notice of any alleged error. Nonetheless, PNC took steps in good faith to contact the financial institutions of first deposit to see if any funds could be recovered. PNC was able to make a partial recovery of the Wired Funds and contacted Wells Fargo to notify it of such and request indemnity in order to return the funds. To date, Wells Fargo has not provided PNC with an indemnity agreement.

*FAC, ¶ 31.* PNC further declined any liability and refused to confirm the name of the account holder that received Wire Transfers, and refused to reimburse the Wire Transfers. *FAC, ¶ 32.*

Although Wells Fargo confirmed on January 5, 2023, that PNC did not return any funds from Wire Transfers, and stated PNC was not required to return the funds requested by Wells Fargo, Wells Fargo never informed Plaintiff about the partially recovered funds. *FAC, ¶ 33.*

Based on Wells Fargo's refusal to respond to ArubaWater and PNC, it is unclear whether Wells Fargo ever investigated ArubWaters claims as required. *FAC, ¶ 34.* If Wells Fargo had contacted PNC, it would have known about PNC's partial recovery of ArubaWater funds. *FAC, ¶ 35.* If Wells Fargo did contact PNC Bank, it knew about the partially recovered funds and refused to inform ArubaWater of the same. *FAC, ¶ 36.* Despite the fact ArubaWater timely notified Wells Fargo of the incorrect name, that the intended recipient, Sourceline, did not receive the Wire Transfers, and intended indemnity as to the $100,000.00 transfer, Wells Fargo now takes the position it is not required to indemnify. *FAC, ¶ 37.*

ArubaWater relied on Wells Fargo to investigate ArubaWater's claim. *FAC, ¶ 38.* Aruba Water relied on Wells Fargo's intent to indemnify not only to receive the partially recovered funds by PNC finds but to also file this lawsuit. *FAC, ¶ 39.*

## I.    STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 579 (2007). The Court in *Twombly* explained that a complaint is read in conjunction with Rule 8(a)(2), Fed.R.Civ.P., which requires a "showing" that the plaintiff is entitled to relief, "rather than a blanket assertion" of entitlement to relief. *Id*. at 556 n. 3. While blanket assertions may provide a defendant with the requisite "fair notice" of the nature of a plaintiff's claim, only factual allegations can clarify the "grounds" on which that claim rests. *Id*. "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id*. at 555 (quoting 5 C. Wright & A. Miller, § 1216, pp. 235-36 (2004)).

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court emphasized that, while a trial court examining a complaint for sufficiency must accept the factual allegations as true, the trial court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is "a context-specific task" requiring the court "to draw on its judicial experience and common sense." *Iqbal* at 679. Where well-pleaded facts only "permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that the plaintiff is entitled to relief. *Id.*

### III.    LAW AND ARGUMENT

#### A.  Matters Outside the Complaint.

Wells Fargo Amended Motion to Dismiss is supported by Exhibit B, defined as the "Wire Transfer Recalls." *Amended Motion, at p.4.*   Wells Fargo asserts this "Court may consider the wire transfer recalls as incorporated by its reference in the Amended Complaint because it is integral to and relied upon in the Amended Complaint. *Id., at n. 3* (citing *See Van Buskirk v. CNN,* 284 F.3d 977, 980 (9th Cir. 2002) and *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir. 2003)).

However, in *Van Buskirk* the citation is from the factual background section of the opinion and explains:  "The district court, without objection, concluded that it could properly consider the complete interview transcripts and tapes under the incorporation by reference doctrine." *Van Buskirk*, at 980.  The *Van Buskirk* Court further noted "Neither party challenges this decision to review the complete transcripts and tapes." *Van Buskirk*, at 980, n. 3.

In *Ritchie,* the Court further explains incorporation by reference "that the mere mention of the existence of a document is insufficient to incorporate the contents of a document by reference." *Ritchie*, at 908 (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and*

*Procedure* § 1327 (2d ed.1990).  Also, that the document needs to be "reference extensively" (citing *Van Buskirk*, at 980), and is an "integral to [the] claim" *Id.,* (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 n. 4 (9th Cir.1998)).   Finally, the *Ritchie* Court explained incorporation by reference that is integral to the claim would be the contents of a plan in an insurance claim, or SEC filings based on a claim for stock fraud.  *Ritchie*, at 908.  Notably, the *Ritchie* Court overturned the trial court's decision to incorporate by reference certain documents.  *Ritchie*, at 909.

Exhibit B to the Amended Motion show the recalls supposedly sent by Wells Fargo to PNC.  Exhibit B, which ArubaWater has never seen in this form, is not an integral part of its claims against Wells Fargo, nor is it referenced extensively.  In fact, ArubaWater does not mention the recalls being a document at all, which brings into question where this document came from, how it is created, when it was created, who created it…etc.  By way of comparison, Exhibit A to the Amended Motion is the Account Holder Services Agreement ("Agreement") between the Parties which governs the Parties obligations and forms the basis of ArubaWaters claims for Breach of Contract and Breach of Good Faith and Fair Dealing.  As such, Exhibit A to the Amended Motion is a document that is integral to ArubaWater's claims and extensively reference throughout the FAC.

ArubaWater requests this Court follow *Ritchie* and *Van Buskirk* and exclude Exhibit B to the Amended Motion, as it is clearly consists of matters outside the FAC, and to avoid the Amended Motion as being treated as one for summary judgment under Rule 56, Fed.R.Civ.P.  *See* Rule 12(d), Fed.R.Civ.P.  If the Court is inclined to treat the Amended Motion as one for summary Judgment, ArubaWater requests time for discovery before having to respond to the factual

disputes related to Exhibit B of Wells Fargo's Amended Motion.

**IV.    The UCC does not Preempt Common Law Claims.**

Wells Fargo's argument that Article 4A of the UCC is intended to be the exclusive means of determining the rights, duties and liabilities, and preempts any and all common law claims is incorrect.  The case cited by Wells Fargo in the Amended Motion, *Koss v. Am. Express,* 233 Ariz. 74, 81 (Ariz. Ct. App. 2013) (*Dkt. 18, at p. 6*) carefully explains just the opposite.  "[U]nless displaced by the particular provisions ... the principles of law and equity ... supplement [the U.C.C.'s] provisions..." *Koss* at, 906,  ¶ 23.  Further, A.R.S. § 47-4A1212 states in part: "[T]he bank owes no duty to any party to the funds transfer except as provided in this chapter **or by express agreement**." (Emphasis added).  As such, ArubaWater's claim for Breach of Contract and Breach of Good Faith and Fair Dealing should survive.

Article 4A of the UCC governs the conduct during the wire transfer process, whereas the allegations set forth in both ArubaWater's Count I, Breach of Contract, and Count II, Breach of Good Faith and Fair Dealing contain allegations, not only expressed in the Agreement itself, but Wells Fargo's actions and conduct that breached its duties **after** the wire transfer process. *FAC, at ¶¶ 46 a-f & 50 a-g.*  Certainly, the actions after the wire transfer process are not governed by Article 4A of the UCC. but by the Agreement, if not all Wells Fargo's actions.

*i. Breach of Contract.*

Admittedly, ArubaWater is a little confused as to Wells Fargo's argument regarding Count I for Breach of Contract beginning on page 7 of the Amended Motion.  On the one hand Wells Fargo cites cases (mostly from California) that ArubaWater is required to cite to specific provisions of the Agreement, insinuating that ArubaWater has not done so. *Amended Motion, at*

*7.* On the other hand Wells Fargo states "ArubaWater cites only two provisions in the Agreement to support its claims that Wells Fargo failed its duties…" *Id*. Meaning ArubaWater meets the standard (to the extent it is the standard) of citing to specific provisions. Regardless, ArubaWater is specific in the duties Wells Fargo held, the provisions associated, and how they were breached.

Regarding the commercially reasonable security procedure to verify the authenticity of an instruction received to send a funds transfer, Wells Fargo was obligated to follow (*FAC, ¶ 43*), ArubaWater has alleged they were likely not followed. *FAC, ¶¶ 11-16 & 46(a)*. As to the liability that shifts from the account holder to Wells Fargo upon its negligence or misconduct (*FAC, ¶ 44*), ArubaWater alleges with specificity that Wells Fargo had a duty to investigate, told ArubaWater it did investigate, may not have investigated, ignored PNC, ignored ArubaWater's inquiries, failed to inform ArubaWater that funds were partially recovered, or maintain its intended indemnity. *FAC, ¶¶ 46(b)-(f)*.

Wells Fargo tries to limit its negligence or misconduct to losses related to *unauthorized* funds only, and ArubaWater did not allege the transfers were unauthorized. However, ArubaWater alleges that it initiated a fraud claim (*FAC, ¶ 17*) which triggered the recalls. *FAC, ¶¶ 19-21*. Initiating a fraud claim clearly indicates the Wire Transfers were unauthorized. To the extent this Court considers Exhibit B to the Amended Motion over ArubaWater's request not to convert the Amended Motion to one for summary judgment, each of the six (6) recalls state "unauthorized wire." Wells Fargo admits the Wires Transfers are unauthorized, but then argues to this Court in support of dismissal they were authorized. Wells Fargo cannot have it both ways.

Wells Fargo next argues it "did exactly what ArubaWater instructed it to do in accordance with the Agreement. ArubaWater's payment orders instructed Wells Fargo to process the wire

transfers to an account number ending in -3614." *Amended Motion, at 9.* This is a factual dispute and is certainly not alleged by ArubaWater. What is plead, is ArubaWater initiated Wire Transfers to the Sourceline Account and Sourceline says it never received them. Questions of fact remain. Did Wells Fargo actually send the Wire Transfers to the Sourceline Account.? Sourceline says no. If the account number was correct as entered by ArubaWater did the Wire Transfers actually go to the intended account? That will not be known until some discovery is conducted, but again, Sourceline says no. At this point in the litigation, factual issues cannot be determined and what is plead is taken as true for the purposes of this Amended Motion.

Wells Fargo then creates another factual dispute regarding the indemnity, whether intended or not. Again, this argument requires this Court to review Exhibit B of the Amended Motion which are matters outside the First Amended Complaint. Regardless, what is plead is that indemnity was intended at least in part. *FAC, ¶ 20.* If Wells Fargo is correct, their request for adjudication can be made later in a motion for summary judgment after some discovery is taken.

ArubaWater has met the standard that Wells Fargo correctly cites to under, *Snyder v. HSBC Bank, USA, N.A.*, 913 F. Supp. 2d 755, 779 (D. Ariz. 2012). *Amended Motion, at 7.* ArubaWater's allegations, looking at the entire FAC, are specific and not vague or speculative. Therefore, ArubaWater's Count I for Breach of Contract should remain.

### ii. Breach of Good Faith and Fair Dealing

Wells Fargo argues that "ArubaWater cannot create obligations through the covenant of good faith and fair dealing that are not expressly provided in the Agreement…[and] [n]owhere in the Agreement does it provide that Wells Fargo is required to investigate ArubaWater's claims, respond to PNC in an effort to recover some of the monies by providing PNC with indemnity, or

respond to ArubaWater's demand letter." *Amended Motion, at 10*. Even if Wells Fargo is correct, which they are not, it is forgetting the representations made by Wells Fargo that it would investigate, it would issue recalls, it would try to recover the Wire Transfers, then come to find out Wells Fargo may not have investigated at all, sent the recalls, or did anything. Once Wells Fargo represented it would take certain actions, even if optional under the Agreement, those actions were required to be completed.

Just as in ArubaWater's Count I for Breach of Contract, Count II for Breach of Good Faith and Fair Dealing should remain.

### V.     Violations of the Uniform Commercial Code – Funds Transfer (A.R.S. § 47-4A101 et seq.).

As to the claims alleged under Article 4A of the UCC Wells Fargo is requesting this Court, again, to make factual determinations at this stage in the litigation. The factual issues that would need to be determined are: 1. Whether ArubaWater had notice prior to the Wire Transfers that the payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary (A.R.S § 47- 4A207(C)(2)); 2. The payment order erroneously instructed payment to a beneficiary not intended by the sender (A.R.S § 47- 4A205); 3. That commercially reasonable security protocols were in place and used at the time of the wire transfers (A.R.S § 47-4A205); and 4. Whether Wells Fargo sent the Wire Transfers to someone other than Sourceline (A.R.S § 47- 4A303(C)).

These questions of fact cannot be resolved now but are later resolved in a motion for summary judgment if the discovery supports one Parties position without dispute.

      *i.*  *A.R.S § 47- 4A207(C)*

Pursuant to A.R.S § 47- 4A207(C)(2):

> If the originator is not a bank and proves that the person identified by number was not entitled to receive payment from the originator, the originator is not obliged to pay its order unless the originator's bank proves that the originator, before acceptance of the originator's order, had notice that payment of a payment order issued by the originator might be made by the beneficiary's bank on the basis of an identifying or bank account number even if it identifies a person different from the named beneficiary.

Under A.R.S § 47- 4A207(C)(2) Wells Fargo is required to prove ArubaWater had notice that the Wire Transfers will be sent even if Sourceline Account number was not Sourceline's or even went to another account altogether.   To do that Wells Fargo holds the burden of proving that ArubaWater had notice before initiating the Wire Transfers which can only be done by "admissible evidence" which can only be satisfied by a "signed a writing stating the information to which the notice relates." *Id.*

Attaching an unsigned Agreement to a Motion Dismiss is not admissible evidence, nor is it signed.  Further, nowhere is it alleged in the FAC when the Agreement was given to ArubWater.  As such, Wells Fargo's burden cannot be met at this stage in the litigation.

      *ii.*  *A.R.S § 47- 4A205*

Wells Fargo argues that A.R.S. § 47-4A205 does not apply to this this case because it concerns only liability when there is an error in the content of a payment order and there is a security procedure designed to detect the error. *Amended Motion, at 12*.  Again, this requires this Court to determine whether the Wire Transfers erroneously instructed payment to a beneficiary not intended by ArubaWater, and/or if Wells Fargo used commercially reasonable security protocols that were in place and used at the time of the Wire Transfers.  If it is found that a security

procedure was in place and the error was not detected (i.e. Wells Fargo failed to comply) A.R.S. § 47-4A205 does apply.

Wells Fargo also alleges that "Wells Fargo and ArubaWater only agreed to a security procedure for verifying that a payment order is that of the customer." *Amended Motion, at 13 (citing Ex. A at 19)*. This is a very thin reading of the Funds Transfer Security Procedure found on page 19 of the Agreement. This section incorporates a lot of unknowns at this time, including that "[t]he security procedure may vary depending on whether we receive the instruction in person, in writing, by phone, or via online or mobile…[and] [m]ore details about the security procedures may be found in the applicable funds transfer agreement." Simply put at this stage of the litigation, it is unclear what, if any security procedures were in place, were they complied with, and therefore where liability lies.

However, based on the facts plead, one can reasonably infer that Wells Fargo failed to comply with the security procedures in place, failed to detect the clear error, identify the beneficiary, and Sourceline never received the Wire Transfers. In other words, as plead, A.R.S. § 47-4A205 does apply.

iii.    A.R.S § 47- 4A303(C)

ArubaWater agrees with Wells Fargo that A.R.S. § 47-4A303 concerns situations where payment orders fail to conform with the originator's payment order instructions where an originator may instruct the originating bank to make a payment to account X and the originating bank might mistakenly instruct a beneficiary's bank to make payment to account Y. That may be the case here. ArubaWater instructed Wells Fargo to send the Wire Transfers to the Sourceline Account and Sourceline denies ever getting the Wire Transfers. PNC denies getting the recalls.

Neither PNC nor Wells Fargo as ever informed ArubaWater that the Wires went into Sourceline Account, nor is that plead.

Again, Wells Fargo requests this Court to make a factual determination that the Wire Transfers went to the Sourceline Account, which it may not have, at this stage of the litigation, despite the contrary being plead in ArubaWater's FAC.

## VI.   CONCLUSION.

Considering the UCC is not an absolute preemption to common law claims, the common law claims are adequately plead, and Wells Fargo is asking this Court to make many factual determinations at this stage of the litigation regarding any violation of Article 4A of the UCC, ArubaWater respectfully requests this Court deny Wells Fargo's Amended Motion.

RESPECTFULLY SUBMITTED on this 26th day of July, 2023.

By: *s/Timothy M. Collier*
TIMOTHY M. COLLIER
3295 N. Drinkwater Blvd., Suite 9
Scottsdale, Arizona 85251
*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on July 26, 2023, the foregoing **ARUBAWATER'S RESPONSE TO WELLS FARGO BANK, N.A.'S AMENDED MOTION TO DISMISS AMENDED COMPLAINT** was filed with the United States District Court, for the District of Arizona, using the CM/ECM system, which will send notification of such filing to counsel of record via electronic mail as follows:

Carlie S. Tovrea
Diamond J. Zambrano
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2556
ctovrea@swlaw.com
dzambrano@swlaw.com

*Attorneys for Defendant Wells Fargo Bank, N.A.*

*s/ Tremain Davis*
Tremain Davis

-15-